(Judge Clark, of the Fourth Circuit, taking the place of Judge Cox.)

\*MATTHEW AND MICHAEL. RYAN v. THE CITY OF CINCINNATI.

PAYMENT OF DAMAGES FOR CHANGE OF GRADE OF STREET.

When the owner of property abutting on a street has improved his property with reference to an existing grade, and the grade is afterwards changed, whereby he is damaged, the damages assessed in his favor must be paid *before* the work of changing the grade is commenced.

---

\*This case was affirmed by the Supreme Court without report Oct. 28, 1890. Judge Spear dissented from judgment dismissing cross-petition of defendants in error.

ERROR to the Court of Common Pleas of Hamilton county.

The facts in substance are these :

The city of Cincinnati, by its common council, passed a resolution to grade Hunt street, which street already had an established grade, and abutting property owners had made valuable improvements on the same in accordance with said grade. The new grade will cause a fill of sixteen feet in front of plaintiffs in error's improvements. The city gave notice to abutting property owners as required by section 2304 of the Revised Statutes, and other property owners, including plaintiffs in error, filed claims for damages.

Thereupon the city brought an action to inquire into and assess the damages to the property owners, which resulted in the jury assessing damages to Matthew Ryan in the sum of $3,888, and to Michael Ryan in the sum of $11,850. The court thereupon entered judgment on the verdict, in form as follows : "It is considered by the court that the said Matthew Ryan, upon the making of the improvement of said Hunt street, in front of said premises, as declared necessary in the resolution of the common council of said city, and as more fully set forth in the petition herein, recover of the plaintiff, the city of Cincinnati, the sum of $3,888, with interest from the date of the commencement of said work on said improvement opposite said premises."

It is claimed that the court erred in entering up judgment on the verdict of the jury in this, to-wit: that instead of giving a judgment upon the making of the improvement with interest from the commencement thereof, it should have been, that before or at the time of the commencement of the improvement the city should pay the amount of the damage found by the jury.

The question therefore is, what is the nature of the right of the plaintiffs in error, which the city has sought to deprive them of, and upon what terms may it do it?

Our Supreme Court in a number of decisions, commencing with the case of Goodloe v. Cincinnati, 5 O., 500, and ending with the case of Cohen v. Cleveland, 43 O. S., have passed upon, and it would seem completely defined the right which abutting property owners have in the street.

The result is one founded on the broadest principles of natural justice, in which the right of the citizen is maintained against the power of the state, and this is all that it had to commend it at the time when the case of McComb v. Akron, 15 O., 474, which cases first fully outlined the law as it now stands, was decided. But like all cases that are founded on reason and natural justice, it was not destined to remain without support, as several of the states have since followed our rulings.

In the case of Crawford v. Delaware, 7 O. S., 459, 466, Judge Swan referring to the case of McComb v. Akron, says : "This decision is in direct conflict with English and American cases. * * * The remark of Bronson, J., in Radcliffs v. Brooklyn, 4 Comst., 205, that 'if in McComb v. Akron, the Supreme Court of Ohio intended to hold that persons, whether artificial or natural, were answerable for the damages which might result to an adjoining land owner from the grading of the street, though the act was done under ample authority and in a propr manner, the case is in conflict with many decisions, and cannot be law beyond the State of Ohio, is probably true. And it is also true that the Supreme Court in making that decision was aware that it was in direct conflict with the decisions both in England and America.

The decisions of our Supreme Court being in conflict with the common law and most of our state courts, we must look no further to ascertain the law applicable to this case, than our own courts.

In the case of Crawford v. Delaware, *supra*, and in the case of Street R'y v. Cumminsville, 14 O. S., 523, are to be found the best considered opinions on these questions.

An examination of these two cases leaves no doubt, in our opinion, as to the nature of the right that an abutting property owner has in the street, and the terms upon which he may be deprived of it.

Judge Ranney says in the Cumminsville case, *supra*, p. 546: "In either case the interest acquired and used by the public at large is an easement of a definite character, and held for the attainment of known objects, and in either case distinct from the right of the public to use the street is the right and interest of the owners of lots adjacent. With the fact known and appreciated by everybody, that a large part of the value of lots in towns, was made up in reference to their location upon streets, and with a long course of decisions enforcing the liability of municipal corporations for invasions of this *right*, it still took nearly twenty years to bring it to a clear and definite description. But at length in the case of Crawford v. Delaware, 7 O. S., 459, it was placed upon the true ground, as a *right of property* protected by the constitution, which could not be taken from the owner without compensation. * * * This easement appendant to these lots, unlike any right of one lot owner in the lot of another, *is as much property as the lot itself.* Upon a doctrine so just and necessary, and resting upon foundations so solid and satisfactory, it can matter very little that our conclusions are not concurred in by the courts of our sister states. * * * If, before the public has exercised this right through the regularly constituted authorities, the lot is improved, the owner must do so with reference to its reasonable and proper exercise thereafter; and cannot complain if his means of access to his improvements are impaired through his own discretion. But when the public has taken possession and regularly defined the interests and improvements necessary for its use, by established grades, etc., lot owners have the right to assume this exercise of authority as a final decision of the wants of the public, and to make their improvements in reference to it. If any mistake is made, it is the mistake of public authorities, and it cannot be corrected at the expense of those who have acted and expended their money on the faith of its being final.

"This action on their part, is, in legal effect, a distinct and appreciable division of the easement belonging to the public, and under its exclusive control, from that belonging to the owner of the lot, and incident to the lawful and beneficial enjoyment of his property. If, in the progress of improvement, the interests of the public require theirs to be enlarged, and his diminished, it can only be done upon making him compensation to the extent of his injury."

That the property owner has a right of property in the street, which cannot be taken from him without compensation, is of course admitted by the city, and was recognized by the court rendering judgment in his favor. But can this right of property, which the court says is as much property as the lot itself, be taken from him by rendering a judgment in his favor, against the city, which judgment the city may pay at its pleasure, or on its failure to pay, the owner may proceed to collect by execution?

The two questions settled by these decisions are, first, that the abutting property owner has a right of property in the street which is as much as the lot itself, and, second, that this right is "*protected by the constitution*" and can only be taken from him "*upon the terms of the constitution.*" The only remaining question, therefore, is, on what terms may the owner of private property be deprived of it by the public.

Art. 1, sec. 19, of the Bill of Rights, is as follows:

"Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war, or other public exigency, imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, which shall be open to the public without charge, a compensation shall be made to the owner, in money; and in all other cases, where private property shall be taken for public use, a compensation therefore shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed

by a jury without deduction for benefits to any property of the owner." By this provision we think the owner of private property can never be deprived of it, whether taken in time of war, for public roads, or in any other cases, except upon compensation being made him in money.

In the case of Crawford v. Delaware, *supra*, Judge Swan, on p. 467, says: " If the land of a citizen, or his rights in property, are commanded to be taken from him, it is beyond the power of the general assembly to authorize either to be touched until compensation is made." And in the Cumminsville case, *supra*, Ranney, J., at page 550, says: " The difficulty of giving this any effect, in the present case arises from the fact, that the justice of the constitution has provided that what the one thus gains and the other loses, shall be paid for, before the property is taken or invaded."

That these two eminent judges have stated the law correctly there seems no room to doubt, nor does there seem to be any reason to doubt, that the judgment in this case is not such a compensation in money as required by the constitution.

The judgment here is " upon the making of the improvement (that is the compensation of the improvement), as declared necessary "—the property owner shall recover the amount of the damage he will sustain. Under this judgment the city takes the property of the citizen without compensation in money, and may retain it a long time without paying him therefor. It is true they give him interest from the time of the taking. But manifestly this does not meet the requirement of the constitution, and the only thing that can meet it is the payment of the money at the time of the taking. The city's right to appropriate this property can only accrue to it where the money is paid.

The judgment of the court below will be reversed, and judgment will be rendered here in accordance with the foregoing opinion.

There were several matters raised in the argument which we think are necessarily answered by the conclusions reached above, and these are not therefore averted to.

Hoadly, Johnson & Colston, for plaintiffs in error.

Coppock, Cox & Gallagher, for city.

---

## INSOLVENT ESTATES. 563